# A. J. Cranor Co., Ltd., *et al. v.* Miller, *et al.*

*Bill to Annul Contract, and to Have Property Restored.*

(Decided June 14th, 1906. 41 So. Rep. 678.)

1. *Corporations; Foreign Corporations; Non-compliance with Statute; Effect.*—One who has entered into a contract of sale with a foreign corporation, and has performed the contract

[A. J. Cranor Co., Ltd., *et al.* v. Miller, *et al.*

by. a delivery of the property sold to the corporation, cannot urge, as a ground for setting aside the sale, the failure of the corporation organized in another State to comply with Section 1316, Code 1896, and the Constitutional provision relating thereto.

2. *Same; Contracts before Incorporation; Construction.*—Appellees, owners of a saw mill outfit and timber contract, entered into an agreement with the company to sell said saw mill outfit and timber rights to the company in consideration of the organization of a corporation for the manufacture .of lumber; stipulating further, also, that the corporation should be capitalized at $10,000, one-fourth of the stock to be owned by appellees, and three-fourths to be owned by the Company. Held, the contract so entered into stipulated, not only the organization of a corporation, but that the company would contribute something of value to it in consideration of three-fourths of the stock which should be owned by the company.

3. *Same.*—Where a company agreed to organize a corporation to be capitalized at $10,000, one-fourth of which was to be owned by the owner of a saw mill outfit and timber rights and three-fourths to be held by the company, and in compliance with the contract the owner of a saw mill outfit and timber rights conveyed to the corporation his property in consideration of one-fourth of the stock, and the comapny did nothing towards its part of the contract in the way of payment for three-fourths of the stock held by it, and the rights of no other stock holders intervening to be affected ·by the cancellation of the sale, the seller was entitled to maintain a bill against the company and the corporation to have his right in the saw mill outfit and timber restored to him.

4. *Sales; Purchasers from Buyer; Notice of Equity.*—Where property was sold to a company in consideration of the organization of a corporation to carry on the lumber business, the purchaser of the property so sold to the company, who had knowledge of the equities of the seller in the property, is liable to the seller.

APPEAL from Mobile Chancery Court.

Heard before Hon. THOMAS. H. SMITH.

The bill in this case was filed by Charles G. Miller and C. T. Rogers, as complainants, against the A. J. Cranor Company, Limited, the Russell Lumber Company, Limited, and John Jackson, seeking to avoid a contract made between these parties and to have property rights

in certain machinery and timber land restored to complainants. The facts made by the bill are that the complainants and A. J. Cranor Company, Limited, entered into a contract the provisions of which are as follows: That the complainants are the owners of a sawmill outfit consisting of a 35 horse power boiler and a 30 horse power engine and sawmill, with edger saw and other connections, situated on the land of the Mobile & Chattanooga Railroad Company, near Russell, in Mobile county, Ala., and that they have certain timber interests in lands and options on stumpage for pine timber to be cut. That the machinery was bought from Adams Machine Company by complainants, and that complainants were due on said machinery between $500 and $600, with retention of title in the machinery to the said machine company until the purchase price was so paid. The complainants sold and delivered all their right, title, and interest to all pine timber stumpage options and timber rights held by them, together with the machinery and appliances, to the A. J. Cranor Company, Limited, upon the consideration that the A. J. Cranor Company would pay off and discharge the amount due the Adams Machine Company for the unpaid balance on the machinery, and would form a stock company for the manufacture of lumber within 60 days from the date of the contract, capitalized at $10,000, one-fourth (or $2,500) of the said stock to be held and owned by Miller and Rogers, and three-fourths (or $7,500) of capital stock to be held and owned by the A. J. Cranor Company. In the event of the failure on the part of the A. J. Cranor Company to fulfill this contract within the 60 days, the property rights and machinery should revert to and become the property of the complainants. The bill further alleges the delivery of the property by complainants to the A. J. Cranor Company; the formation of a stock company under the laws of the state of Louisiana, with an ostensible capital of $10,000; that said stock company was organized under the name of the Russell Lumber Company; that said A. J. Cranor Company has failed to subscribe for the stock according to agreement, or, if they

have subscribed, they have failed to pay for said stock, either in money, labor done, money borrowed, or property actually received by said company, as is required by the laws of Louisiana, but that this company has caused to be issued $7,500 of the said stock of the Russell Lumber Company to the said A. J. Cranor Company without payment therefor in any amount; that said stock was issued in fraud of complainants and for the purpose of obtaining control and the right of disposition over property of complainants; that A. J. Cranor Company has failed and refused to pay to the Adams Machine Company the purchase money still due on the machinery, except a small part thereof, to-wit, about $95, and that the Adams Machine Company are making demands upon complainants for the balance due on said machinery; that at the time of making the agreement said A. J. Cranor Company had no intention to pay any sum of money or any other consideration for the stock of said Russell Lumber Company, and the proposed organization of the said Russell Lumber Company was a fraudulent scheme to deprive complainants of their property as aforesaid; that all of the stockholders of the said Russell Lumber Company, except complainants, are officers of said company, and that neither the A. J. Cranor Company, nor the Russell Lumber Company, nor John Jackson have sufficient assets within the state of Alabama to satisfy any judgment at law which might be rendered against them or either of them; that said sawmill is not now being operated and no insurance is carried on the same; that said property is depreciating in value; that the Russell Lumber Company has begun dismantling it, and that there is great danger of it being destroyed or moved beyond the jurisdiction of the courts of this state and lost to orator; that John Jackson claims to have purchased the machinery and is dismantling it and removing it; and that the purchase was made by him with full knowledge of complainants' equity and rights in the premises. The bill further alleges that at the time of the making of the agreement above set out the A. J. Cranor Company was a foreign corporation and had not complied with the statutes of the state of Alabama with respect

of foreign corporations doing business in this state. The same allegations were made with reference to the Russell Lumber Company. An injunction was issued as prayed. Demurrers and answers were filed to the bill, but they are not necessary here to be set out, as they sufficiently appear from the discussion of them in the opinion. The facts also sufficiently appear in the opinion.

ROACH & McMILLAN, for appellants. No brief came to the Reporter.

MITCHELL & TONSMIRE, for appellees. No brief came to the Reporter.

ANDERSON, J.—This bill was filed to cancel a contract for the sale of a mill outfit and certain timber rights, and after a delivery of the property by the complainants to the respondents, and seeks to have the contract declared void *ab initio,* because made in violation of section 1316 of the Code of 1896, or, if valid in its inception, that it be canceled upon the ground of fraud practiced upon complainants by the vendee, the Cranor Company. We do not think that a failure of the foreign corporation to comply with the constitutional provisions and section 1316 is available to these complainants, as the contract has been fully performed by them by a delivery of the property sold.—*Gamble v. Caldwell,* 98 Ala. 577, 12 South. 424; *Farrior v. New Eng. Mtg. Co.,* 88 Ala. 275, 7 South. 200; *Kindred v. New Eng. Mtg. Co.,* 116 Ala. 192, 23 South. 56. Since the complainants are not entitled to relief upon this theory of the bill, it is needless to consider the action of the chancellor upon the demurrers proceeding upon this feature of the case.

We think the contract contemplated, not only the organization of a corporation, but that the respondent the Cranor Company would contribute something of value to the concern; that is, do more than merely issue three-fourths of the stock to themselves, but that the same was to be paid for. Otherwise, we would have a case of one party furnishing all the capital and getting one-fourth of the stock, and the parties furnishing nothing getting

three-fourths of the stock. The bill avers that the Cranor Company procured the complainants' property without a valuable consideration thereof, and that the said company at the time had no intention to pay anything of value for the stock of the corporation, the organization of which was a fraudulent scheme to get complainants' property, and therefore contained equity. "The general rule is that the relation of the promoter to the corporation and its members is one of trust, and he must act in all things fairly and openly."—*Yale v. Wilcox* (Conn.) 25 L. R. A. 90, and note. "Promoters who acquire property to be used by the corporation wholly at the cost of those who pay for their shares, and retain for themselves a majority of the stock, which cost them nothing, will be required to pay to the defrauded subscribers the damages caused by such action."—*Brewster v. Hatch*, 122 N. Y. 349, 25 N. E. 505, 19 Am. St. Rep. 498.

As a rule the remedy of a defrauded subscriber is against the defrauding promoter, and not the corporation; but in the case at bar the respondent the Cranor Company and the complainants constitute the corporation, which seems to have been formed by the Cranor Company as an attempted literal compliance with their contract, and there are no intervening rights of other stockholders to be affected by a cancellation of the sale. The evidence clearly shows that the Cranor Company did not intend at the time of the execution of the contract to put anything of value into the new corporation, and that it was a scheme to get control and management of complainants' property, and the chancellor properly granted the complainants relief.—*Dean v. Oliver*, 131 Ala. 634, 30 South. 865. The bill avers that Jackson had full knowledge of complainants' rights and equities when he bargained for the property, and the demurrers interposed by him were properly overruled.

The decree of the chancellor is affirmed.

WEAKLEY, C. J., and TYSON and SIMPSON, JJ., concur.