(94 South. 823)

### WILDMAN v. MEANS. (8 Div. 434.)

(Supreme Court of Alabama. Nov. 30, 1922.)

1. **Public lands** ☞136—**Mortgage executed on homestead entry before final proof but without intent to evade United States statute held valid, where patent was given to mortgagor before foreclosure.**

Where a mortgage, executed on a homestead entry on September 12, 1890, without intent to evade the homestead laws, became payable September 12, 1895, was foreclosed November 2, 1896, and patent from the United States government issued to the mortgagor on June 30, 1891, the mortgage was not void but the title inured to the benefit of the purchaser at the foreclosure sale.

2. **Homestead** ☞33—**Homestead entry land held not "homestead" within Constitution and laws of state, in absence of residence by entryman and wife on the land.**

Where the mortgagor of a U. S. homestead entry land maintained his home on the place where his wife lived, not on the homestead entry mortgaged, but he satisfied the requirements of the laws of the United States by having his mother and sister live on it, his homestead entry land was not his homestead within Const. 1901, § 205, and laws of the state.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Homestead.]

3. **Ejectment** ☞25(5)—**Title of entryman not assailable in action of ejectment, where both parties claim title through entryman.**

Title of an entryman on public lands could not be assailed in an action of ejectment, where both parties claimed title through him.

4. **Mortgages** ☞368 — **Foreclosure is valid without writing.**

A foreclosure is valid without a writing, such as a certificate of foreclosure.

5. **Evidence** ☞383(7)—**Recitals of deed that grantor was unmarried woman held conclusive.**

The objection to a deed that grantor may have been a married woman and the deed therefore void for lack of assent and concurrence of her husband, as required by Code 1907, § 4494, will not be considered, where the deed recites that grantor is an unmarried woman.

6. **Husband and wife** ☞232(1) — **Burden of showing invalidity for lack of assent and concurrence of husband held on party asserting invalidity.**

In ejectment action, the burden of showing the invalidity of deed by a woman, on the ground that she was married and there was lack of assent and concurrence of her husband, as required by Code 1907, § 4494, is on the person asserting the invalidity.

7. **Evidence** ☞25(4)—**Court takes judicial notice that District of Columbia mentioned in notarial seal on deed is District of Columbia, capital of the United States.**

The court takes judicial cognizance of the fact that the District of Columbia, which, from his seal, appears to be notary's residence, is the District of Columbia, the capital of the United States, and the court accepts the authentication provided by the notarial seal, under Code of 1907, § 3359.

8. **Release** ☞38—**Relinquishment to one as agent and attorney for owner, held a relinquishment to agent, not owner.**

A relinquishment, executed by a mortgagor and made to "B., agent and attorney for J.," plaintiff's grantor, introduced as an acknowledgment of the validity of a mortgage standing at the source of her title, *held* not a release nor relinquishment to plaintiff's grantor, but whatever legal effect it had upon plaintiff's title inured to B.

9. **Ejectment** ☞78—**Inaccuracy of references in title abstract to relinquishment of interest in land, introduced in evidence to confirm plaintiff's title, held harmless.**

Where, in an action of ejectment, a relinquishment purporting to evidence a confirmation of title in plaintiff was not noted in her amended abstract of title, which showed that she expected to "rely upon the sale or relinquishment by W. to J. on January 30, 1902," *held,* though the description of the relinquishment was inaccurate, it sufficiently apprised defendant of the relinquishment offered in evidence, which' was admissible to confirm plaintiff's title.

10. **Witnesses** ☞275(7) — **Question whether defendant saw marriage record of his father and mother held improper to prove nonexistence of record of marriage of his parents.**

Cross-examination of defendant as to whether he had ever seen any record of any marriage of his father and mother was not proper to prove that there was no record showing a marriage between his mother and father, no examination of the records being shown.

11. **Appeal and error** ☞1048(6)—**Attempt to prove absence of record of marriage on cross-examination of witness held harmless error.**

Where, from the undisputed evidence, defendant's father and mother were not residing on homestead entry land at the time the mortgage was executed by defendant's father, it became immaterial, so far as the validity of the mortgage was concerned, whether or not a record existed of the marriage of defendant's parents, and hence an erroneous ruling on plaintiff's improper method to prove absence of a marriage record was harmless error.

Appeal from Circuit Court, Marshall County; W. W. Haralson, Judge.

Action of ejectment by Leola B. Means against W. E. Wildman. From a judgment for plaintiff defendant appeals. Affirmed.

Charge 7 refused to defendant reads:

"The court charges the jury that if the land in question was a homestead at the time of the execution of the mortgage your verdict should be for the defendant."

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

John A. Lusk & Son, of Guntersville, for appellant.

Where a deed conveying land purports to have been executed by an officer, and it is sought to use the deed in evidence as to the title to the land, the power and authority to make the deed must be shown. 78 Fla. 535, 83 South. 386; 52 Utah, 253,. 173 Pac. 383, 4 A. L. R. 641; 229 Mass. 374, 118 N. E. 933; 97 S. E. 200; (Tex. Civ. App.) 209 S. W. 258; 139 Ark. 236, 213 S. W. 383; 41 Cal. App. 358, 182 Pac. 967; 100 S. E. 569. An acknowledgment before one claiming to be a notary in the District of Columbia, without showing in what state or country the District of Columbia is, and without a seal, and without any showing that the notary had authority to certify acknowledgments to conveyances or to administer oaths, is insufficient. 113 Me. 389, 94 Atl. 482, L. R. A. 1916A, 1167. The courts of this state cannot take judicial notice of the appointments, power, and term of office of notaries in other states. 106 Ala. 663, 18 South. 74;. 31 Ala. 396; 57 Ala. 518; 91 Ala. 416, 8 South. 712; Code 1907, § 3359. Since plaintiff in ejectment must recover on the strength of his own title, he must, if the proof shows the legal title in another, connect himself with the title of such other, or he cannot recover. 146 Ala. 687; 137 Ala. 333, 34 South. 391. An instruction that the title conveyed to a homestead entryman by a patent made in 1891 inured to the benefit of his mortgagee, who held a mortgage given in 1890, is erroneous. 201 Ala. 358, 78 South. 214. It was error to refuse charge 7, where defendant showed that his father was married at the time he executed the mortgage under which plaintiff claims, and which his wife did not sign. 190 Ala. 266, 67 South. 437; 7 Ala. App. 220, 60 South. 955; 12 Ala. App. 431, 68 South. 563.

D. Isbell, of Guntersville, for appellee.

Both parties claim title through Jerry Wildman, and both are estopped to dispute his title. 83 Ala. 484, 3 South. 618; 92 Ala. 497, 9 South. 83; 99 Ala. 60, 11 South. 447; 103 Ala. 380, 15 South. 822. The mortgage conveying the land was properly acknowledged and recorded, and was therefore self-proving. Code 1907, § 3374. It is not necessary, to make a valid foreclosure of a mortgage, that there be any writing whatever. 71 Ala. 62; 74 Ala. 452; 82 Ala. 622, 2 South. 520; 92 Ala. 480, 9 South. 176; 93 Ala. 321, 9 South. 596; 100 Ala. 551, 13 South. 778; 155 Ala. 498, 46 South. 769, 130 Am. St. Rep. 62; 204 Ala. 636, 87 South. 105. The seal of the notary was attached, and our courts take judicial notice of the terms of office of foreign notaries, where the official seal is properly attached to the acknowledgment. Code 1907, § 3359. The court correctly charged that the mortgage was valid. 201 Ala. 46, 77 South. 340.

SAYRE, J. Statutory action of ejectment by appellee against appellant. The parties trace title through a common source, Jerry Wildman. Plaintiff (appellee) deraigned title through an instrument, in form a mortgage, executed by Jerry Wildman September 12, 1890, and containing full covenants of warranty. Defendant claimed as son and heir at law. The merits of these respective claims depend upon the validity and effect of the mortgage and a deed to plaintiff from the mortgagee, who purchased at a foreclosure under the power conferred by the mortgage.

[1] The fundamental objection to plaintiff's title is that, as Jerry Wildman acquired what interest he had in the land by a homestead entry, the mortgage executed by him prior to perfecting his right to a patent was wholly void as against the policy of the homestead laws of the United States. This mortgage was executed September 12, 1890, as we have shown, became due and payable September 12, 1895, and was foreclosed November 2, 1896; patent issued to Jerry Wildman June 30, 1891. Plaintiff cites Quinn v. T. C. I. Co., 201 Ala. 46, 77 South. 340, where it was held that a mortgage upon government land, made by an entryman holding under the Homestead Act prior to final proof, no evasion of the statute being intended, is not void, and, if the entryman subsequently acquires title from the government, his title will inure to the benefit of the purchaser at a subsequent foreclosure sale. That decision, under the facts here shown, is conclusive against the objection just now under consideration. Defendant, on the other hand, cites Hale v. McGraw, 201 Ala. 358, 78 South. 214. But defendant in that case claimed under an absolute conveyance from the entryman, executed long before he had perfected his right to a patent, and on the difference shown by this fact the court discriminated between that case and Quinn v. T. C. I. Co., supra.

Further objection to plaintiff's title is interposed on the ground that no authority appears to have been conferred by the mortgage on the auctioneer making the sale. The mortgage provides that, in the event of a default in the payment of the debt thereby secured and a foreclosure, the mortgagee, or her agent or appointee in such behalf, is constituted the attorney in fact of the mortgagor to execute and deliver proper deed to make such sale fully effectual. There was evidence—to which there was no objection on the ground of incompetency—going to show the auctioneer's authority to make the sale, nor was there evidence to the contrary. The trial court was justified therefore in its ruling, by implication, that the mortgage had been foreclosed by an agent acting under appointment by the mortgagee.

[2, 3] Defendant objected to the admission of the mortgage in evidence on the further

ground that the premises conveyed were the homestead of the mortgagor, and his wife had not joined therein in manner and form as prescribed by the statute of this state. The court committed no error in overruling this objection. There was no evidence of a ceremonial marriage between mortgagor and the mother of defendant, and while a finding that there had been a common-law marriage might have been proper under the proof—though one recital of the mortgage is that mortgagor was an unmarried man—it appeared without dispute that mortgagor maintained his home, if any, on the place where his wife lived, not on the land in controversy, and that this land was not his homestead within the meaning of the Constitution and laws of this state, which protect land used and occupied as a home place, a dwelling place, a family seat. Mayfield's Cons., § 205, and cases cited in note on page 241. It appears that Jerry Wildman undertook to satisfy the requirement of the laws of the United States by having his mother and sisters live on the place in controversy, but his residence was where he resided with his wife and children. This is not to deny mortgagor's title under the homestead laws of the United States, for both parties are committed to its validity; neither can be heard to deny it in this action. Graham v. Partee, 139 Ala. 310, 35 South. 1016, 101 Am. St. Rep. 32. Nor was anything said to the contrary in Powers Clothing Co. v. Smith, 202 Ala. 634, 81 South. 576.

[4] Plaintiff was allowed to introduce a certificate of foreclosure purporting to have been made by the auctioneer conducting the sale on the day and date of the same. There was no objection to this paper for lack of proof of its authenticity, nor other specific objection except that the auctioneer's authority was not shown—an objection heretofore considered—and that the sale did not appear to have been advertised as the mortgage required. This certificate appears to have been accepted as evidence of the fact that there was a foreclosure at which the mortgagee became the purchaser of the land in suit. It is not necessary to hold, nor does the court hold, that it was evidence of anything more, or that anything more needed to be proved, for it seems to be the law of this court that a foreclosure may be valid without a writing. Bellenger v. Whitt, 95 South. 10; [1] Bank of New Brockton v. Dunnavant, 204 Ala. 636, 87 South. 105; Hambrick v. New England Mortgage Security Co., 100 Ala. 551, 13 South. 778; Mewburn's Heirs v. Bass, 82 Ala. 622, 2 South. 520; Cooper v. Hornsby, 71 Ala. 62.

[5-7] The deed from the mortgagee to plaintiff appeared on its face to have been acknowledged before a notary public in the District of Columbia, the notarial seal being attached. We can attach no serious meaning to the suggestion that the grantor may have been a married woman, and so that the deed is void for lack of the assent and concurrence of her husband (section 4494 of the Code) or that the court cannot take cognizance of the appointment and term of office outside of the state of Alabama. The recital of the deed is that grantor is an unmarried woman, but, apart from that, if its operation were questioned on the ground indicated, the burden rested on defendant to show its invalidity, while, as for the other objection, the court takes judicial cognizance of the fact that the District of Columbia in which is the official residence of the notary is the District of Columbia, the capital of the United States, and the court accepts the authentication provided by the notarial seal. Code, § 3359; Hart v. Ross, 57 Ala. 518. The case would be different had there been no seal. Ala. Nat. Bank v. Chattanooga Door & Sash Co., 106 Ala. 663, 18 South. 74.

[8, 9] The so-called "relinquishment" executed by Jerry Wildman in 1902, and put in evidence by plaintiff, evidenced an acknowledgment of the validity of the mortgage standing at the source of plaintiff's title, but, if the conclusions heretofore announced be sound, its introduction as proof of that fact amounted to a work of supererogation. We think it cannot be accepted as a release or "relinquishment" to plaintiff's grantor, for it was made to "J. L. Burke, agent and attorney for Virginia T. Johnson," so that whatever effect it had upon the legal title inured to Burke. One objection was that the paper was not noted in plaintiff's amended abstract of title which showed that plaintiff expected "to rely upon the sale or relinquishment by Jerry Wildman to Virginia T. Johnson on January 30, 1902." This description of the writing, which evidenced the act of relinquishment, was inaccurate, but we are hardly willing to hold that it did not apprise defendant of the paper writing offered in evidence. However, while the instrument in question did not evidence a confirmation of title in plaintiff, as we have already indicated, it was perhaps admissible for the limited purpose mentioned, and, in any event, reversible error cannot be predicated of the ruling which admitted the paper in evidence. At worst it was harmless.

[10, 11] Defendant, testifying as a witness in his own behalf, was required to answer on cross-examination whether he had ever seen any record of any marriage. The context of the bill of exceptions shows to our entire satisfaction that the question intended to ask about any record showing a marriage between defendant's mother and father. This was not the proper way to prove that there was no record; that is, no examination of the records was shown, but the answer, standing alone as it did, neither proved nor tended to prove that there was no record, and the fact of record vel non, in view of the

─────────────

[1] Post, p. 655.

undisputed proof as to the actual residence of the mother at, before, and after the date of the mortgage, was immaterial. No harm can have resulted from this ruling.

Charge 7, requested by defendant, was refused without error. If by "homestead" the charge intended a homestead entry under the laws of the United States, the error of the charge has been shown by reference to the authority of Quinn v. T. C. I. Co., supra. If it intended a homestead under the Constitution and law of the state of Alabama, it was well refused for the reason pointed out above, viz. there was no evidence in support of that hypothesis.

There was no reversible error.

Affirmed.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.